**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

ANTOINE T.,

                        Plaintiff,

v.                                                    3:18-CV-0232
                                                      (CFH)
COMM'R OF SOC. SEC.,

                        Defendant.
_____

**APPEARANCES:**                          **OF COUNSEL:**

LACHMAN & GORTON                    PETER A. GORTON, ESQ.
1500 East Main Street
P.O. Box 89
Endicott, New York 13761-0089
Attorneys for Plaintiff

U.S. SOCIAL SECURITY ADMIN.        JOHANNY SANTANA, ESQ.
OFFICE OF REG'L GEN. COUNSEL
REGION II
26 Federal Plaza, Rm. 3904
New York, New York 10278
Attorneys for defendant

**CHRISTIAN F. HUMMEL**
**United States Magistrate Judge**

<u>**MEMORANDUM-DECISION & ORDER**</u>

        Currently before the Court, in this Social Security action filed by Antoine T.

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are Plaintiff's motion

for judgment on the pleadings and Defendant's motion for judgment on the pleadings.

(Dkt. Nos. 9 and 12.)  For the reasons set forth below, Plaintiff's motion for judgment on

the pleadings is denied and Defendant's motion for judgment on the pleadings is granted.

# I. RELEVANT BACKGROUND

## A. Factual Background

Plaintiff was born in 1976, making him 38 years old at the application date and 40 years old at the date of the ALJ's decision. Plaintiff reported completing the twelfth grade and one year of college. Plaintiff reported past work as a bouncer, cashier, factory line worker, mover, and warehouse worker. At the initial level, Plaintiff alleged disability due to herniated discs in his lumbar spine and low vision with legal blindness without correction.

## B. Procedural History

Plaintiff applied for Supplemental Security Income on September 19, 2014, initially alleging an onset date of September 23, 2009. Plaintiff subsequently amended his alleged onset date to September 19, 2014, his application date. (T. 32, 50, 222.) [1] Plaintiff's application was initially denied on December 12, 2014, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff appeared at a hearing before ALJ John P. Ramos on March 23, 2017. (T. 29-49.) On April 25, 2017, the ALJ issued a written decision finding Plaintiff was not disabled under the Social

---

[1] The Administrative Transcript is found at Dkt. No. 8. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

Security Act.  (T. 13-28.)  On December 22, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (T. 1-6.)

## C.    The ALJ's Decision

First, the ALJ found that Plaintiff has not engaged in substantial activity since the application date.  (T. 18.)  Second, the ALJ found that Plaintiff's degenerative disc disease of the lumbar spine, obesity, and vision loss are severe impairments.  (*Id.*) Third, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (T. 19-20.)  Specifically, the ALJ considered Listings 1.04 (disorders of the spine) and Listings 2.02 (loss of central visual acuity), 2.03 (contraction of the visual field in the better eye), and 2.04 (loss of visual efficiency, or visual impairment, in the better eye) pertaining to vision.  (*Id.*)  Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work except he "should avoid fine, close-up work requiring binocular vision but retains sufficient visual acuity to work with small and large objects and to avoid workplace hazards."  (T. 20.)  Fifth, the ALJ found that Plaintiff is unable to perform any past relevant work.  (T. 24.)  Sixth, the ALJ found that Plaintiff can perform other jobs existing in significant numbers in the national economy.  (T. 24-25.)  The ALJ therefore concluded that Plaintiff is not disabled.

### D. Arguments

#### 1. Plaintiff's Arguments

Generally, Plaintiff makes two arguments in support of his motion for judgment on the pleadings. (Dkt. No. 9, at 9-18 [Pl.'s Mem. of Law].) First, Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence. (*Id.* at 9-17.) Specifically, Plaintiff contends that the ALJ improperly substituted his lay opinion for that of undisputed medical opinion and that the RFC cannot be squared with the opinions of treating physician Darlene Denzien, D.O., and consultative examiner Gilbert Jenouri, M.D. (*Id.* at 9-10, 14-17.) Plaintiff also argues that the ALJ's analysis of other medical opinions does not undercut or contradict these opinions. (*Id.* at 10.)

Plaintiff emphasizes that Dr. Denzien's opined limitations for lifting and standing are undisputed and that such limitations are inconsistent with the requirements of light work. (*Id.* at 10-12.) Plaintiff argues that Dr. Jenouri's assessment of "moderate restrictions" for lifting, standing, and walking is vague and ambiguous. (*Id.*) Plaintiff argues that without additional information, there is no substantial basis for the ALJ's conclusion that Dr. Jenouri's use of the term "moderate" contradicts or undermines Dr. Denzien's limitations. (*Id.* at 11-12.)

Similarly, Plaintiff contends that Dr. Denzien's opinion that Plaintiff's impairments would cause him to be off-task for 20 percent of the workday and absent more than three days per month is undisputed and is supported by clinical evidence. (*Id.* at 12-13.) He further contends that Dr. Jenouri did not offer an opinion on work pace or attendance. (*Id.*) Plaintiff also argues Dr. Denzien's opinion that Plaintiff needs to

4

change positions frequently is substantiated by clinical evidence.  (*Id*. at 13-14.)  Plaintiff further argues the ALJ failed to consult a vocational expert ("VE"), leaving no evidence concerning employer tolerances for time off-task, absenteeism, or limitations regarding the need to change positions frequently.  (*Id*.)  Plaintiff contends that the ALJ arbitrarily substituted his lay opinion by rejecting these limitations.  (*Id*. at 14-15.)

Plaintiff also argues that the ALJ improperly analyzed his eyesight limitations in concluding that he retains sufficient visual acuity to work with small and large objects and avoid workplace hazards.  (*Id*. at 15-16.)  Plaintiff contends that (1) the medical basis for this conclusion is "unclear at best," (2) the ALJ did not "articulate sufficient reasoning to allow for meaningful judicial review," and (3) the ALJ "relie[d] on no medical opinion to correlate the visual impairments with Plaintiff's residual functioning." (*Id*.)

Additionally, Plaintiff argues that Dr. Denzien's opinions should be given controlling weight under the treating physician rule because her opinions are well-supported by the overall clinical evidence and because the ALJ did not identify other substantial inconsistent evidence.  (*Id*. at 16-17.)  Plaintiff argues the ALJ erred in failing to articulate good reasons for not affording controlling weight to Dr. Denzien's opinions and in failing to analyze the regulatory factors.  (*Id*.)

Finally, Plaintiff argues that the Step Five determination is not supported by substantial evidence.  (*Id*. at 17-18.)  Specifically, Plaintiff contends the ALJ erred in relying solely on the Medical-Vocational Guidelines rather than consulting with a VE,

because Plaintiff has several non-exertional limitations related to work pace, attendance, the need for a sit/stand opinion, and his vision.  (*Id.* at 18.)

## 2.  Defendant's Arguments

First, Defendant argues that the ALJ properly assessed the medical opinions when formulating the RFC.  (Dkt. No. 12, at 7-12 [Def.'s Mem. of Law]).  Specifically, Defendant contends that substantial evidence supports the ALJ's evaluation of Dr. Denzien's opinions, including his observations that her opinion was not supported by diagnostic images, clinical findings, or Plaintiff's activities of daily living.  (*Id.* at 7.) Defendant also argues that substantial evidence supports the ALJ's evaluation of Dr. Jenouri's opinion, including the ALJ's observation that Plaintiff's daily activities did not support a limitation for climbing stairs and that clinical findings did not support postural limitation or limitations for standing or walking to the extent proscribed by Dr. Jenouri. (*Id.*)  Defendant points out that the ALJ based the RFC assessment in part on Dr. Jenouri's opinion that Plaintiff had moderate limitations in lifting and carrying.  (*Id.*)

Defendant argues that "half of the evidence" Plaintiff cites in support of the contention that the ALJ substituted his opinion for that of undisputed medical opinions of Dr. Denzien and Dr. Jenouri is from outside of the relevant time period, and that the "remainder" of the evidence does not support disabling limitations.  (*Id.* at 7-8.) Responding to Plaintiff's argument indicating Dr. Jenouri's opinion regarding moderate limitations was too ambiguous to contradict Dr. Denzien's opinion, Defendant contends Dr. Jenouri based his opinion on his examination which supported an RFC for light

work, contradicting Dr. Denzien's opinion. (*Id.* at 8-9.)  Defendant also argues Dr. Denzien's opinion was not consistent with the evidence or Dr. Jenouri's opinion and was thus not entitled to controlling weight. (*Id.* at 9.)  Additionally, Defendant contends that the ALJ was not required to accept Dr. Denzien's opinion about Plaintiff's ability to maintain pace and attendance because Dr. Jenouri's opinion suggests Plaintiff's pain was not significant enough to interfere with his ability to maintain appropriate pace and concentration, the objective record evidence had largely normal findings, and Plaintiff cared for his children and did various chores around his home (which belied an ability to stay on pace).  (*Id.* at 9-11.)

Regarding Dr. Denzien's opinion that Plaintiff must switch positions frequently and Plaintiff's argument that such a limitation requires VE input on Plaintiff's access to light jobs, Defendant points out that Dr. Jenouri did not indicate Plaintiff needed to switch positions frequently, only that he had moderate limitations in prolonged sitting. (*Id.* at 11.)  Defendant contends the record reflects largely mild or normal findings and, where the ALJ accurately rejected alternating sit/stand requirements, he was under no obligation to contact a VE to assess the effect of such a limitation.  (*Id.*)  Defendant argues the ALJ within his role of the factfinder to reject Dr. Denzien's limitations where the record, including Plaintiff's admissions, belied such restrictions.  (*Id.*)

Regarding Plaintiff's eyesight, Defendant argues that Plaintiff admitted at the administrative hearing that he was able to read, use a computer, watch television, and care for his children.  Thus, Defendant contends that the ALJ reasonably concluded that Plaintiff's visual impairment would not cause work-preclusive limitations.  (*Id.* at 11-12.)

7

Second, Defendant argues that substantial evidence supports the Step Five determination because the ALJ reasonably declined to include most of Plaintiff's purported limitations in work pace, attendance, the need for a sit/stand option, and vision, and, although the ALJ included certain visual limitations, they were not significant enough to require VE testimony. (*Id.* at 12-13.) Defendant contends that, because Plaintiff retained the ability to work with large objects and avoid hazards, the ALJ's reliance on the Medical-Vocational Guidelines was acceptable. (*Id.* at 12.)

### 3.    Plaintiff's Reply Memorandum of Law

On reply, Plaintiff repeats his argument that Dr. Jenouri's opined "moderate" limitations do not provide substantial evidence for the RFC because the word "moderate" is meaningless without further explanation from Dr. Jenouri and the ALJ and Defendant merely speculate as to what Dr. Jenouri meant by "moderate." (Dkt. No. 14, at 2-4 [Pl.'s Reply Mem. of Law]). Plaintiff contends that the cases Defendant cites in support of the argument that the use of vague words such as "moderate" is cured if the underlying report is based on examination findings are contrary to Second Circuit precedent. (*Id.* at 3.) Plaintiff argues that words like "moderate," without further explanation, are too ambiguous to assist an ALJ in assessing whether a claimant can meet the functional demands of light work. (*Id.* at 3-4.) Plaintiff also argues that "[n]o conclusions can be made with respect to Dr. Jenouri's opinions because they are ''remarkably vague' and thus cannot be readily compared to Dr. Denzien's opinions." (*Id.* at 3.)

8

Second, Plaintiff contends that Defendant's arguments concerning work pace and attendance must be rejected as they have "little relation to whether Plaintiff's pain was sufficient to interfere with his ability to maintain acceptable levels of work pace on a regular and continuing basis . . . or maintain acceptable attendance levels. (*Id.* at. 3-4.) Plaintiff also argues that his ability to engage in some child care says "very little, if anything, about his ability to work a full work day every day of the workweek." (*Id.*)

Third, Plaintiff argues that medical evidence from outside of the period under consideration is relevant because "[e]vidence from before an amended disability onset date is relevant to a claimant's condition during the relevant period where, as here, there is no evidence of a significant change in the claimant's impairments after that date." (*Id.* at 5.) Plaintiff contends that his

> limitations are caused by impairments to the spine that are not known to magically resolve themselves and that there is no evidence of any treatment or other factors that may have improved his condition such as to suggest the records from prior to the amended onset date do not reasonably reflect his condition on and after the amended onset date.

(*Id.*)

Fourth, Plaintiff reasserts his argument that the ALJ improperly analyzed his eyesight limitations because it is "unclear" how his admissions regarding the ability to read, use a computer, watch television, and care for his children "relate to the ALJ's finding that Plaintiff retains sufficient visual acuity to work with small and large objects and to avoid workplace hazards." (*Id.* at 5-6.)

## II.    LEGAL STANDARD

## A.    Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even

where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

## B.    Sequential Evaluation

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform

11

his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.  Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).


## III.    ANALYSIS

### A.    Whether Substantial Evidence Supports the ALJ's Analysis and Findings Regarding the Opinion Evidence and Plaintiff's RFC

RFC is defined as "'what an individual can still do despite his or her limitations . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.'" *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)).  "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee*, 631 F. Supp. 2d at 210 (citing 20 C.F.R. § 404.1545(a)).  "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'" *Hendrickson v. Astrue*, 11-CV-0927, 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting Social

Security Ruling ("SSR") 85-15, 1985 WL 56857, at *8).  The RFC determination "must

be set forth with sufficient specificity to enable [the Court] to decide whether the

determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582,

587 (2d Cir. 1984).

The regulatory factors for considering opinions from non-treating medical sources

are the same as those for assessing treating sources, with the consideration of whether

the source examined the claimant replacing the consideration of the treatment

relationship.  20 C.F.R. §§ 416.927(c)(1)-(6).  The regulations also require that the ALJ

"'explain in the decision the weight given to the opinions of a State agency medical or

psychological consultant or other program physician or psychologist.'"  *Campbell v.

Astrue*, 713 F. Supp. 2d 129, 140 (N.D.N.Y. 2010) (quoting 20 C.F.R. §

416.927(e)(2)(ii); SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996)).

Here, the ALJ found that Plaintiff can perform light work and that he retained

sufficient visual acuity to work with small and large objects and to avoid workplace

hazards but that he should avoid fine, close-up work requiring binocular vision.  (T. 20.)

In so doing, as will be detailed below, the ALJ considered the various opinions of record

along with Plaintiff's testimony and treatment.  (T. 20-24.)


### i.      The ALJ's Analysis of the Opinion Evidence

In September 2014, Brenda Frayer, LPN, noted that she had discussed with

Plaintiff that he was disabled for work given his level of training, but that he should

consider retraining for sedentary work.  (T. 250.)  The ALJ gave no evidentiary weight to

this opinion because it did not provide a function-by-function assessment of Plaintiff's limitations and abilities and it was not supported by the clinical findings during examination (including normal gait and station (T. 22). Further, the ALJ noted that Ms. Frayer's opinion on Plaintiff's training needs was entitled to "no evidentiary weight because she is not a vocational expert." (T. 22, 254.)

Dr. Jenouri performed a consultative examination in November 2014. Dr. Jenouri observed Plaintiff to be in no acute distress, had a normal gait and stance, could walk on his heels and toes without difficulty, used no assistive devices, needed no help changing for the exam or getting on and off the exam table, and was able to rise from a chair without difficulty. (T. 312.) Plaintiff could squat 50 percent and had a limited range of motion in the lumbar spine with positive straight leg raising ("SLR") testing bilaterally at 40 degrees . (T. 313.) Plaintiff also had left sciatic notch tenderness to palpation; decreased sensation to fine touch in the left lower extremity with distribution L4; and limited range of motion in his shoulders, hips, and ankles. (*Id.*) He had full range of motion in his elbows, forearms, wrists, and knees; physiologic and equal deep tendon reflexes in his upper and lower extremities; full strength in his upper and lower extremities; intact hand and finger dexterity; and full grip strength, bilaterally. (*Id.*) Dr. Jenouri diagnosed low back pain and asthma; opined that Plaintiff had moderate restriction to walking, standing, and sitting long periods, bending, stair climbing, lifting and carrying; and recommended that he avoid smoke, dust, and other known respiratory irritants. (T. 313-14.) The ALJ afforded partial weight to this opinion to the extent that it was supported by the evidence of record. (T. 23.)

14

The ALJ noted that Plaintiff's activities of daily living suggested that he did not have significant limitations for climbing stairs and that the clinical findings during the consultative examination did not support Dr. Jenouri's opinion regarding postural, standing, or walking limitations. (T. 23-24, 312-13.) The ALJ gave no evidentiary weight to the portion of Dr. Jenouri's opinion that opined that Plaintiff should avoid respiratory irritants because examination of Plaintiff's chest and lungs was normal and because Plaintiff performed a broad range of activities of daily living, which suggested that he had no environmental limitations due to a respiratory impairment. (T. 24, 312.) The ALJ also gave some evidentiary weight to Dr. Jenouri's opinion that Plaintiff had moderate limitations for lifting and carrying because it was supported by the diagnostic images and clinical findings showing Plaintiff had a back impairment. (T. 24.) The ALJ indicated that the RFC determination was supported by Dr. Jenouri's opinion in part, Plaintiff's reported activities of daily living, the clinical findings during physical examinations, and the diagnostic images of record. (*Id.*)

In February 2017, Dr. Denzien opined that Plaintiff's conditions including lumbar disc degeneration, a herniated lumbar disc, legal blindness, and asthma would cause pain, fatigue, diminished concentration and work pace, and the need to rest at work. (T. 424.) She also opined Plaintiff would be off-task more than 20 percent of the day but less than 33 percent of the day and that he would be absent more than four days per month. (T. 425.) Medication side effects included sedation and fatigue. (*Id.*) Dr. Denzien concluded that Plaintiff could sit for two hours out of an eight-hour day, could stand or walk for two hours out of an eight-hour day, should change positions every 30

minutes, and could occasionally lift up to 10 pounds. (*Id.*) She noted Plaintiff also had

visual issues making it "extremely unlikely" that he could successfully train for sedentary

work. (*Id.*) She indicated that the time period for the opined limitations was from

September 2009 to February 2017. (*Id.*) The ALJ afforded little evidentiary weight to

this opinion after concluding that it was not supported by Plaintiff's reported activities of

daily living, the clinical findings, or the diagnostic images (which did not show findings

so severe as to support Dr. Denzien's opinion). (T. 22-23, 34, 36, 38-40, 241-42, 246,

254, 258, 311, 333, 335, 340, 342, 349, 408.)


### ii. The Court's Analysis

Plaintiff argues the RFC determination is not supported by substantial evidence

because (1) the ALJ substituted his lay opinion for undisputed medical opinion, (2) the

ALJ improperly weighed the opinion evidence in giving Dr. Denzien's opinions little

weight without articulating good reasons or properly analyzing the regulatory factors,

(3) Dr. Jenouri's opined "moderate" limitations do not undermine Dr. Denzien's opined

limitations or provide substantial weight for the RFC, and (4) the ALJ improperly

analyzed the limitations Plaintiff's eyesight caused without articulating sufficient

reasoning or relying on a medical opinion. (Dkt. No. 9, at 9-17 [Pl.'s Mem. of Law]; Dkt.

No. 14, at 2-6 [Pl.'s Reply Mem. of Law].) The Court finds these arguments

unpersuasive for the following reasons.

First, the ALJ's analysis and resulting RFC indicate adequate consideration of

the opinions as well as Plaintiff's alleged impairments and symptoms, treatment history,

and testimony. (T. 20-24.) In his decision, the ALJ noted he had considered Plaintiff's symptoms based on the requirements of 20 C.F.R. § 416.929 and SSR 96-4p and had considered the opinion evidence in accordance with the requirements of 20 C.F.R. § 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. (T. 20.) The ALJ's overall decision reflects a detailed review of the evidence of record in compliance with these regulations.

Second, contrary to Plaintiff's arguments that the ALJ (1) substituted his lay opinion, (2) failed to properly consider the opinion evidence, (3) failed to properly analyze the regulatory factors in considering the opinion evidence, and (4) failed to properly analyze Plaintiff's alleged limitations (including those related to his eyesight) without articulating sufficient reasoning, the Court finds that the ALJ's analysis provides sufficient consideration of the evidence (including the medical opinions) with specific reasons given for the weight afforded to both Dr. Denzien and Dr. Jenouri's opinions. (T. 22-24.) As summarized above, the ALJ afforded partial weight to Dr. Jenouri's opinion, noting that limitations regarding postural, standing, or walking were not supported by the clinical findings during the consultative examination. (T. 23-24, 312-13.) The ALJ further explained that no evidentiary weight was given to Dr. Jenouri's opined limitations indicating that Plaintiff should avoid respiratory irritants because of a normal chest and lung examination and Plaintiff's broad range of activities of daily living. (T. 24, 312.) Likewise, the ALJ afforded little evidentiary weight to Dr. Denzien's opinion because it was not supported by Plaintiff's reported activities of daily living, the clinical findings, or the diagnostic images (which did not show findings so severe as to support Dr. Denzien's opinion). (T. 22-23, 34, 36, 38-40, 241-42, 246, 254, 258, 311, 333, 335,

17

340, 342, 349, 408.)  The Court's review of the ALJ's decision reveals that the decision indicates careful consideration of the opinions in the record and the related evidence.

As the Court has previously noted, it was within the ALJ's purview to resolve any material conflicts in the evidence and various opinions of record.  *See Bliss v. Colvin*, 13-CV-1086, 2015 WL 457643, at *7 (N.D.N.Y. Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); *accord Petell v. Comm'r of Soc. Sec.*, 12-CV-1596, 2014 WL 1123477, at *10 (N.D.N.Y. Mar. 21, 2014).  This Court will not now reweigh that evidence which was before the ALJ.  *See Lewis v. Colvin*, 122 F. Supp. 3d 1, 7 (N.D.N.Y. 2015) (noting that it is not the role of a court to "re-weigh evidence" because "a reviewing court 'defers to the Commissioner's resolution of conflicting evidence'" where that resolution is supported by substantial evidence) (quoting *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012); citing *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009)); *Vincent v. Shalala*, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of the reviewing court to reweigh the evidence.") (citing *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)).

Further, the ALJ's resolving of such conflicts in the medical evidence does not amount to interpreting raw medical data or substituting his lay opinion for that of medical professionals.  *See Hanson v. Comm'r of Soc. Sec.*, 15-CV-0150, 2016 WL 3960486, at *9 (N.D.N.Y. June 29, 2016), *Report and Recommendation adopted by* 2016 WL 3951150 (N.D.N.Y. July 20, 2016) (noting that, although it is impermissible for an ALJ to

interpret "raw medical data" and substitute his own opinion for that of a medical source, it is within the ALJ's power to resolve conflicts in the medical record).

Although Plaintiff argues that the ALJ improperly interpreted the imaging studies and medical records, the Court finds that the ALJ's analysis of the imaging studies does not "pit[] his lay interpretation of the medical evidence against that of the treating physician." (Dkt. No. 9, at 16-17 [Pl.'s Mem. of Law].) Rather, the ALJ looked at both the opinion evidence and the imaging studies in considering Plaintiff's RFC and found the treating physician's opinion was not supported by the other evidence of record. (T. 22-24.) The ALJ explained that Dr. Denzien's opinion was given little evidentiary weight because it was not supported by the diagnostic images and clinical findings. (T. 22.) To support his conclusion, the ALJ pointed to a March 2010 lumbar spine MRI showing "bulging discs and disc space narrowing at the L3-L4 levels, mild to moderate facet and ligamentum flavum hypertrophic changes causing mild central spinal stenosis at the L3-L4 level, and mild facet and hypertrophic changes and short pedicles at the L2-L3 levels." (T. 23, 241-42.) The ALJ also acknowledged a January 2013 MRI showing "moderate disc extrusion with mild spinal stenosis that was slightly increased since the March 2010 MRI, moderate disc extrusion with mild to moderate spinal stenosis that was minimally decreased since the March 2010 MRI and which abutted the L4 nerve roots." (T. 23, 246.) Finally, the ALJ noted an October 2016 X-ray of the lumbar spine showing "mild L4-L5 disc degeneration, mild disc space narrowing, and small osteophytes." (T. 23, 342, 408.) The ALJ concluded that these diagnostic images did not show findings so severe as to support Dr. Denzien's opinion (which indicated

19

Plaintiff could lift or carry ten pounds occasionally, stand and/or walk for two hours, sit

for two hours, would need to change positions every 30 minutes, would be absent more

than four days per month, would need to rest at work, and would be off task more than

20 percent of the day).  (T. 22, 424-25.)

The Court notes that, earlier in his RFC analysis, the ALJ stated that the

"diagnostic images suggest that [Plaintiff] may have some exertional limitations related

to his back impairment, but not as severe as he alleges."  (T. 21.)  The ALJ then

summarized evidence, including clinical findings in treatment records from 2012, 2014,

2016, and 2017 indicating intact reflexes, no sensory loss, and normal gait and station,

as well as clinical findings during the November 2014 consultative examination and

determined that these milder findings did not support Plaintiff's allegations.  (T. 21, 254,

258, 312-13, 333, 335, 340, 349.)  The ALJ concluded that the findings "suggest[ed]

[Plaintiff] has no significant limitations for standing, walking or performing postural

activities, but may have some limitations for lifting and carrying due to his back

impairment."  (T. 21.)  The ALJ ultimately weighed the diagnostic images, clinical

records, and the other evidence of record, including the opinion evidence, in reaching

his conclusion that Plaintiff has the RFC to perform light work with some limitations

related to his vision impairment.  (T. 20.)

Regarding Plaintiff's arguments pertaining to his alleged eyesight limitations, the

Court finds that the ALJ did not commit reversible error in his analysis.  As Defendant

points out, it appears that the record does not contain a medical opinion on Plaintiff's

limitations with respect to eyesight.  (Dkt No. 12, at 10 [Def.'s Mem. of Law].)  Exhibit

20

B3F includes records from Roberts Eye Care Associates and suggests that Plaintiff may have been educated about an eyesight-related driving limitation, but there does not appear to be any discussion of other limitations, including any that would affect Plaintiff's ability to work with small and large objects or to avoid workplace hazards, as was found in the ALJ's RFC determination. (T. 20, 308.) Additional ophthalmology reports at Exhibits B5F, B6F, and B7F likewise contain no limitations, with Charles Rubin, M.D. assessing bilateral incipient cataract, refractive error, exotropia, and unstable keratoconus. (T. 319, 326-27.) In December 2016, Dr. Rubin indicated "Plaintiff [was] cautioned about driving, walking, working, as well as wearing sunglasses following dilation" but this report did not otherwise indicate any functional limitations. (T. 326.) Dr. Rubin also noted Plaintiff "was aware [his new] prescription was not a full prescription due to the high astigmatism." (T. 327.)

In considering Plaintiff's alleged vision impairment, the ALJ found that Plaintiff's low vision is a severe, medically-determinable impairment that does not meet or medically equal the severity of a listed impairment. (T. 19-20.) The ALJ noted that Plaintiff acknowledges his vision improves with correction and that Plaintiff testified he reads and uses the computer. (T. 22, 41-43.) Indeed, Plaintiff testified that his vision impairment amounted to very bad astigmatism in the left eye rather than a loss of sight. (T. 42-43.) The ALJ indicated Plaintiff's low vision problems caused some work-related limitations which were accounted for in the RFC. (T. 22.) The ALJ also noted Plaintiff had "been a stay-at-home father for many years, raising his three young children"; reported that "he cooks, cleans, does laundry, shops, cares for his children, socializes,

21

watches television and listens to the radio"; and that his "activities of daily living also show[ed] that he retain[ed] the visual acuity to perform a broad range of activities." (T. 22, 33, 36, 38-41, 311.) In so doing, the ALJ explained his analysis regarding Plaintiff's low-vision impairment and related limitations with sufficient specificity, allowing this Court to determine whether his analysis is supported by substantial evidence. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

The Court also notes that Plaintiff bears the burden of showing disability. *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 123 (2d Cir. 2012) ("As a general matter, '[t]he claimant bears the burden of proving that she suffers from a disability.'") (quoting *Swainbank v. Astrue*, 356 F. App'x. 545, 547 (2d Cir. 2009) (summary order)). Although plaintiff has 20/50 vision in his right eye (corrected) and 20/60 vision in his left eye (corrected), plaintiff has not established limitations resulting from his vision beyond those indicated by the ALJ in his review of the record. The Court therefore finds that the ALJ did not err in analyzing this impairment or any related limitations.

Third, contrary to Plaintiff's argument that Dr. Jenouri's opined "moderate" limitations for lifting, standing, and walking are vague and cannot contradict Dr. Denzien's opinions or provide substantial evidence for the RFC, such terminology in a consultative opinion is not necessarily without utility. *See Monroe v. Comm'r of Soc. Sec.*, 15-CV-1235, 2016 WL 7971330, at *7-8 (N.D.N.Y. Dec. 29, 2016), *Report and Recommendation adopted by* 2017 WL 318838 (N.D.N.Y. Jan. 23, 2017) (noting that, even where a "consultative examiner's opinion may use terminology that, on its face, is vague, such language does not render the consultative examiner's opinion useless in all

22

situations" as long as it is "well supported by his extensive examination" or it can be made "more concrete" by "the facts in the underlying opinion and other opinion evidence in the record") (citing *Zongos v. Colvin*, 12-CV-1007, 2014 WL 788791, at *10 (N.D.N.Y. Feb. 25, 2014); *Waldau v. Astrue*, 11-CV-0925, 2012 WL 6681262, at *4 (N.D.N.Y. Dec. 21, 2003); *Davis v. Massanari*, 00-CV-4330, 2001 WL 152495, at *8 (S.D.N.Y. Nov. 29, 2001)). Such is the case here, where the ALJ's opinion indicates that, although some weight was given to Dr. Jenouri's opinion, further analysis from the ALJ regarding said opinion as well as the ALJ's analysis of the remaining evidence makes any such vague limitations more concrete within the context of the decision. (T. 24.)

Here, the ALJ indicated that Dr. Jenouri's opinion -- opining, in part, moderate restriction to walking, standing, and sitting long periods, bending, stair climbing, lifting and carrying -- was given partial weight to the extent that it was supported by the evidence of record. (T. 23, 314.) The ALJ subsequently explained that Plaintiff's activities of daily living suggested that he did not have significant limitations for climbing stairs – noting that he lived on the second floor and had laundry in the basement -- and that the clinical findings during the consultative examination did not support Dr. Jenouri's opinion that Plaintiff had postural limitations or limitations for standing or walking. (T. 23-24) Such clinical findings included the fact that Plaintiff appeared to be in no acute distress, had a normal gait and stance, was able to walk on his heels and toes without difficulty, was able to squat to 50 percent, used no assistive devices, needed no help changing for the exam or getting on and off the exam table, was able to rise from a chair without difficulty, and retained full range of motion of his knees. (T. 23-

24, 312-13.)  The ALJ also acknowledged that Plaintiff had limited range of motion of his lumbar spine, but noted he was able to extend to ten degrees, flex to 40 degrees, laterally flex to 20 degrees, and rotate to 20 degrees.  (T. 24, 313.)  Similarly, the ALJ recognized that Plaintiff had limited range of motion of his hips but also observed that he was able to flex/extend to 60 degrees on the right and to 70 degrees on the left.  (*Id.*)  Further, although noting that Plaintiff had decreased sensation in the L4 distribution, the ALJ observed that Plaintiff had no strength deficits in his lower extremities.  (*Id.*)  This additional explanation, combined with the ALJ's analysis of the other evidence of record, further solidifies the "moderate" limitations from Dr. Jenouri and, thus, these are not "useless" in determining Plaintiff's RFC.  (*Id.*)

Importantly, the ALJ indicated that the RFC determination was supported by Dr. Jenouri's opinion *in part*.  (*Id.*)  Further, it does not appear that the ALJ utilized Dr. Jenouri's opinion to undermine or question Dr. Denizen's opined limitations.  (T. 22-24.)  Instead, the ALJ's reasoning for affording only little evidentiary weight to Dr. Denzien's opinion indicates he relied on the diagnostic images and clinical findings.  (*Id.*)  Rather than relying solely on Dr. Jenouri's opinion (and any such "vague" limitations therein) to formulate the RFC or relying on said opinion to undermine Dr. Denzien's opinion, as Plaintiff suggests, the ALJ adequately considered the opinions and the other evidence of record -- including Plaintiff's testimony, reports, and treatment -- to determine the RFC.  For the reasons outlined above, the ALJ's analysis of the opinion evidence, as well as the resulting RFC, are supported by substantial evidence.  Remand is not required on these bases.

24

**B.    Whether Substantial Evidence Supports the ALJ's Step Five Finding**

Although the claimant has the general burden to prove he has a disability under the definitions of the Social Security Act, the burden shifts to the Commissioner at Step Five "'to show there is other work that [the claimant] can perform.'"  *McIntyre*, 758 F.3d at 150 (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 445 (2d Cir. 2012)).  "An ALJ may rely on a vocational expert's testimony regarding a hypothetical [question] as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion' [and]. . . [the hypothetical question] accurately reflect[s] the limitations and capabilities of the claimant involved."  *McIntyre*, 758 F.3d at 151 (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983); citing *Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981)).  "If a hypothetical question does not include all of a claimant's impairments, limitations, and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability." *Pardee*, 631 F. Supp. 2d at 211 (citing *Melligan v. Chater*, 94-CV-0944, 1996 WL 1015417, at *8 (W.D.N.Y. Nov. 14, 1996)).

After determining the RFC, the ALJ found that Plaintiff is unable to do any past relevant work.  (T. 24.)  The ALJ then found that Plaintiff could perform other jobs existing in significant numbers and concluded that a finding of "not disabled" was appropriate under the framework of Medical-Vocational Rule 202.21 and SSR 85-15. (T. 23-24.)  Plaintiff argues that the ALJ erred in relying solely on the Medical-Vocational Guidelines rather than consulting with a VE given Plaintiff's alleged non-exertional

limitations related to work pace, attendance, the need for a sit/stand option, and vision. (Dkt. No. 9, at 17-18 [Pl.'s Mem. of Law].)  The Court finds this argument unpersuasive.

The Court notes that an ALJ is required to consult with a VE "[i]f a claimant has non-exertional limitations that 'significantly limit the range of work permitted by his exertional limitations[.]'" *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (quoting *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986)).  "[T]he 'mere existence of a non-exertional impairment does not automatically . . . preclude reliance on the [Medical-Vocational] guidelines.'" *Zabala*, 595 F.3d at 410-11 (quoting *Bapp*, 802 F.2d at 603). As discussed above, the Court finds that the ALJ's analysis regarding the opinion evidence and the resulting RFC are supported by substantial evidence.  The ALJ's decision includes adequate explanation for his findings on Plaintiff's alleged limitations, and Plaintiff has not established further limitations than those included in the RFC. Thus, the Court finds that the ALJ did not err in relying on the Medical-Vocational Guidelines and that the Step Five Determination is supported by substantial evidence. Remand is therefore not required on this basis.

## IV. CONCLUSION

**WHEREFORE**, for the reasons stated herein, it is hereby

**ORDERED**, that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **DENIED**; and it is further

**ORDERED**, that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is **GRANTED**; and it is further

**ORDERED**, that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**, and it is further

**ORDERED**, that Plaintiff's Complaint is **DISMISSED**.

Dated: May 31, 2019
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge